UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| *Plaintiff,* | § | |
| v. | § | |
| | § | |
| (1) LUIS FRANCISCO RUIZ, | § | |
| | § | **EP-19-CR-03035(1)-DCG** |
| *Defendant,* | § | |
| and | § | |
| | § | |
| FIRST CONVENIENCE BANK, | § | |
| | § | |
| *Garnishee.* | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Luis Francisco Ruiz's "Claim for Exemption" (ECF No. 71), filed on October 4, 2021. Therein, Ruiz argues that the $1,700 Economic Impact Payment (more commonly known as the stimulus payment) he received pursuant to the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") constitutes unemployment benefits and is therefore exempt from garnishment. The United States responded to Ruiz's Claim for Exemption on October 8, 2021, arguing two points: first, the stimulus payment was not an unemployment benefit, and second, even if it was, Ruiz's stimulus funds are not exempt from garnishment because otherwise exempt property loses that character when deposited into a bank account. Gov't Resp. at 1, ECF No. 72. The Court agrees that the stimulus payment was not an unemployment benefit and is therefore not protected from garnishment.

## I.   BACKGROUND

On January 11, 2021, the Court sentenced Ruiz to 60 months imprisonment with five years of supervised release. In addition, the Court ordered that Ruiz pay a $100.00 mandatory

special assessment and $45,000.00 in restitution.  As of August 2021, Ruiz still owed all $45,100.00.  Gov't Resp. at 1.

In order to enforce the judgment, the United States sought a writ of garnishment against Ruiz's bank account at First Convenience Bank.  ECF No. 63.  The Court issued the writ on August 9, 2021.  ECF No. 64.  First Convenience Bank indicated that the balance of Ruiz's bank account is $3,982.23.  ECF No. 67.  Of that available balance, Ruiz asserts $1,700 is from the stimulus payment dispersed by the United States pursuant to the CARES Act.  Claim for Exemption at 1.

He argues that the $1,700 is protected from garnishment because the money was provided as an unemployment benefit.  In his words, the "$1,700 were from the CARES Act all U.S. citizens received in 2020 to help people cope with unemployment during the hardest time through the pandemic."  *Id.*  In support of this claim, Ruiz attaches the letter that the federal government sent notifying people of the stimulus payments.  *Id.* at 2.  The letter pitches the stimulus payment as "economic relief" from "economic challenges" faced "as a result of the global coronavirus pandemic."  *Id.*

Ruiz submitted the proper claim for exemption form.  He did not request a hearing.  Because the issue is a matter of law, the Court will decide Ruiz's claim for exemption on the papers submitted by the parties.

## II.   LEGAL STANDARD

The United States may enforce a judgment imposing a fine or restitution "against all property or rights to property of the person" against whom judgment was entered.  18 U.S.C. § 3613(a) & (f).  Any enforcement of the fine or restitution must be "in accordance with the practices and procedures for the enforcement of civil judgment under Federal law or State law."

*Id.* § 3613(a). One available enforcement procedure (and the one used in this case) is a writ of garnishment pursuant to 28 U.S.C. § 3205.

But not all funds are available to the United States. By statute, "property exempt from levy for taxes pursuant to sections 6334(a)(1), (2), (3), (4), (5), (6), (7), (8), (10), and (12) of the Internal Revenue Code of 1986 [are] exempt from enforcement of the judgment under Federal law." 18 U.S.C. § 3613(a)(1). Among the list of property exempt from levy for taxes—and therefore exempt from enforcement of the judgment (here, through garnishment)—is unemployment benefits. 26 U.S.C. § 6334(a)(4). "Unemployment benefits" are defined as "[a]ny amount payable to an individual with respect to his unemployment . . . under an unemployment compensation law of the United States, of any State, or of the District of Columbia or of the Commonwealth of Puerto Rico." *Id.*

### III. ANALYSIS

The question for the Court is: Are the relevant provisions of the CARES Act an "unemployment compensation law" under which the United States provided the stimulus payment "with respect to unemployment"? 26 U.S.C. § 6334(a)(4). In simpler terms, the question is whether the stimulus payment was an unemployment benefit.[1] If it was, then Ruiz's $1,700 may be protected from garnishment.[2] If it wasn't, then the United States may properly garnish Ruiz's $1,700.

Start with the CARES Act. In a case requiring statutory interpretation, courts "begin, of course, with the words of the statute." *Howard Hughes Co., LLC v. C.I.R.*, 805 F.3d 175, 180 (5th Cir. 2015) (citing *Phillips v. Marine Concrete Structures, Inc.*, 895 F.2d 1033, 1035 (5th

---

[1] The Fifth Circuit has not had the occasion to address this question.

[2] The United States argues that even if the stimulus payment was an unemployment benefit, Defendant's $1,700 is not protected from garnishment because the protection no longer applies to funds deposited into the individual's bank account. For reasons explained herein, the Court does not reach this argument.

Cir. 1990) (en banc)) (quotations omitted). "This entails not only looking to language of the statute, but also following the cardinal rule that statutory language must be read in context." *Id.* at 180–81 (citing *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)) (cleaned up). Relevant context is not limited to the words immediately surrounding the word or provision at issue; it can include other provisions of the statute. *Russello v. United States*, 464 U.S. 16, 23 (1983) (quotations omitted); *see also Hamdan v. Rumsfeld*, 548 U.S. 557, 578 (2006).

Beginning with the relevant language in the CARES Act that provided for the stimulus payments, nowhere is the word "unemployment" used. Pub. L. No. 116-136, § 2201, 134 Stat. 281, 335–40 (2020). The stimulus payment is framed not as an unemployment benefit but rather a "recovery rebate." *Id.* Congress created the payment structure as "a credit against the tax imposed by subtitle A" of the Internal Revenue Code. *Id.* § 2201(a), 134 Stat. 281, 335. The tax credit was effectively converted to an immediately payable amount—the stimulus payment—by providing for an advanced refund against 2020 federal taxes. *Id.* § 2201(f), 134 Stat. 281, 336–37.

So the stimulus payment was a tax credit. Be that as it may, that does not foreclose the possibility that it was an unemployment benefit. However, if Congress intended the tax credit to be an unemployment benefit, the Court would expect the tax credit to somehow be conditioned on the lack of employment. *See Kane v. Burlington Sav. Bank*, 320 F.2d 545, 547–48 (2d Cir. 1963) (analyzing section 6334(a)(4) and concluding, in part, that disability benefits are not conditioned on unemployment and are not protected against levy). It's not. When Congress defined those who were eligible for the stimulus payment, it did so broadly and without reference to employment status. *See* Pub. L. No. 116-136, § 2201(d), 134 Stat. 281, 335 (defining eligible individuals as "any individual" with three limited exceptions). Even the limitations placed on

- 4 -

the amount an individual could receive were defined based on "the taxpayer's adjusted gross income." *Id.* § 2201(c), 134 Stat. 281, 335. On the face of the relevant statutory provisions, there is no indication that the stimulus payment was an unemployment benefit.

But this does not end the inquiry. It is still necessary to examine the context, *Howard Hughes*, 805 F.3d at 180–81, surrounding the stimulus payment provisions. Because this case does not turn on a particular word or phrase included in the CARES Act, the Court, recognizing the limitations to this approach, starts its examination of the context with the heading of the relevant title. *Cf. Yates v. United States*, 574 U.S. 528, 539–40 (2015) (starting with heading); *see Lawson v. FMR LLC*, 571 U.S. 429, 446 (2014) (describing limits of obtainable information in headings). Title II: "Assistance for American Workers, Families, and Businesses." Pub. L. No. 116-136, 134 Stat. 281, 313. Stimulus payments and unemployment benefits are both forms of assistance, so it would be logical for Congress to have included provisions for both under Title II. Congress did just that. *Id.* §§ 2101–15, 2201, 134 Stat. 281, 313–40.

Though Title II clearly provides for unemployment benefits, it is also quite broad, sweeping within it numerous forms of economic assistance. So the fact that the stimulus "funds were received under the Act does not insure their exemption" from garnishment. *See Kane*, 320 F.2d at 547 (noting the same with respect to disability benefits provided under a law that includes unemployment provisions). Zooming in from the Title to the Subtitles, the status of the stimulus payment comes into sharper focus. The unemployment provisions and the stimulus payment provisions are under separate subtitles: Subtitles B and A, respectively. Pub. L. No. 116-136, §§ 2101–15, 2201, 134 Stat. 281, 313–40. Subtitle A ("Unemployment Insurance Provisions") provides for unemployment assistance for those unemployed or unable to work because of the COVID-19 pandemic. *Id.* §§ 2201–15, 134 Stat. 281, 313–35. Subtitle B

- 5 -

("Rebates and Other Individual Provisions") deals with amendments and additions to the Internal Revenue Code, including providing for the stimulus payment. *Id.* §§ 2201–06, 134 Stat. 281, 335–47.

If Congress intended the stimulus payments to be a part of the unemployment insurance it concurrently provided for, the Court would expect Congress to have included (by at minimum a cross-reference) the stimulus payment provisions under the subtitle dealing with unemployment insurance.[3] *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."). Instead, Congress provided the stimulus payment and unemployment insurance as separate and distinct forms of assistance for workers, families, and businesses. *Cf. Apartment Assoc. of Los Angeles Cnty., Inc. v. City of Los Angeles*, 500 F. Supp. 3d 1088, 1092 (C.D. Cal. 2020) (noting the stimulus payment as separate from a weekly unemployment benefit). The statutory context does not change what was apparent after examining the language of the stimulus payment provisions.

The letter from then-President Donald Trump that Ruiz attaches to his Claim for Exemption is similarly unavailing. Claim for Exemption at 2. The letter served to notify recipients of the stimulus payment, including Ruiz, that their payment had arrived. *Id.* As Ruiz points out, the letter does briefly explain that the purpose of the stimulus payment was to provide "economic relief" and "economic assistance." *Id.* And to be fair, the letter also suggests that the

---

[3] While this may not stand true as a general principle applicable in every case, the Court would find it especially persuasive where, as here, the provisions at issue (the stimulus payment provisions) do not use or reference in any way what the claimant says the Act provides for (unemployment benefits).

government meant the stimulus payment "to protect hardworking Americans . . . from the consequences of the economic shutdown." *Id.*

In analyzing the potential effect the letter might have on the statutory interpretation analysis, the Court will analogize the letter to a presidential signing statement. Such statements are rarely used in statutory interpretation, but when used they are often used as confirmatory or supplemental evidence of congressional intent. *See, e.g., Silva-Trevino v. Holder*, 742 F.3d 197, 202 n.7 (5th Cir. 2014) (using presidential signing statement to provide historical context after citing to statute); *United States v. Prado*, 933 F.3d 121, 139–40 (2d Cir. 2019) (noting presidential signing statement confirms conference report). *Cf. Taylor v. Heckler*, 835 F.2d 1037, 1044 n.17 (3d Cir. 1987) ("[W]e do not determine what weight, if any, a presidential signing statement deserves in the process of statutory interpretation."). The letter's reference to protecting hardworking Americans may, depending on the framing, give a modicum of support to Ruiz's assertion that the stimulus payment was an unemployment benefit. But that alone is wholly insufficient to reverse the conclusion, reached after employing usual methods of statutory interpretation, that Congress did not intend the stimulus payment to be an unemployment benefit.

Even if it were an unemployment benefit, the Government argues, Ruiz's stimulus payment funds would not be exempt under 26 U.S.C. § 6334(a)(4) because the statutory protection against garnishment ceased after funds were deposited into Ruiz's bank account. The Court declines to address this argument. Ruiz's only assertion in his Claim for Exemption is that the stimulus payment is protected from garnishment because it is an unemployment benefit. The Court holds that the stimulus payment was not an unemployment benefit; therefore, it need not entertain the Government's alternative argument.

## IV.     CONCLUSION

Because the Court concludes that the CARES Act stimulus payment was not an unemployment benefit, it does not fall within the property protected from garnishment under 18 U.S.C. § 3613(a)(1) and 26 U.S.C. § 6334.  Thus, the Government may properly garnish Ruiz's $1,700 pursuant to that writ of garnishment and its authority under 18 U.S.C. § 3613.

Accordingly, **IT IS ORDERED** that Defendant Luis Francisco Ruiz's "Claim for Exemption" (ECF No. 71) is **DENIED**.

**So ORDERED and SIGNED this** _10th_ **day of November 2021.**

**DAVID C. GUADERRAMA
UNITED STATES DISTRICT JUDGE**